The Honorable Brian D. Lynch
Chapter 13

UNITED STATES BANKRUPTCY COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| In re | ) | Case No. 17-43012-BDL |
| | ) | |
| SHEILA KELLENE HAVEN, | ) | Chapter 13 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | Adv. Pro. No. _____ |
| | ) | |
| OREGON COMMUNITY CREDIT UNION, a state chartered credit union, | ) ) ) | COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. |
| Plaintiff, | ) ) | § 523(a)(2)(A) (Oregon Community Credit Union) |
| v. | ) ) | |
| SHEILA KELLENE HAVEN, | ) ) | |
| Defendant. | ) | |

Plaintiff alleges:

## JURISDICTION

1. The jurisdiction of this court is based upon 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(I) which arises under 11 U.S.C.

**PAGE 1 OF 5** - COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(2)(A) (Oregon Community Credit Union)

MONSON LAW OFFICE P.C.
1865 NW 169th Place, Suite 208
Beaverton, OR 97006
Telephone: 503-828-1820
Facsimile: 503-828-1893

§523.

2. On August 8, 2017, Sheila Kellene Haven ("Defendant") filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Washington.

PARTIES

3. Plaintiff is an Oregon-state chartered credit union.

4. Defendant is an individual residing in Clark County, Vancouver, Washington.

FIRST CAUSE OF ACTION

(11 U.S.C. §523(a)(2)(A))

5. On or about April 25, 2015, Defendant and Amber Davis executed a retail installment contract (the "Retail Installment Contract") for the purchase of a 2008 Chevrolet Tahoe (the "Collateral"). A copy of the Retail Installment Contract is incorporated herein and attached hereto as Exhibit 1.

6. Defendant and Amber Davis obtained money from Plaintiff under the Retail Installment Contract to fund the purchase of the Collateral, in the amount of $32,044.49.

7. Defendant and Amber Davis promised to pay Plaintiff a sum of $37,021.32 in monthly installments of $440.73, with interest accruing on $32,044.49 at the rate of 3.99% per annum.

8. On or before February 15, 2017, Defendant paid $100.00 to NW Debt Relief, the firm representing Defendant in the main bankruptcy case, for attorneys' fees related to seeking bankruptcy or preparing a bankruptcy petition.

9. On or before February 25, 2017, Defendant received from Cricket Debt

PAGE 2 OF 5 - COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(2)(A) (Oregon Community Credit Union)

MONSON LAW OFFICE P.C.
1865 NW 169th Place, Suite 208
Beaverton, OR 97006
Telephone: 503-828-1820
Facsimile: 503-828-1893

Case 17-04114-BDL    Doc 1    Filed 11/13/17    Ent. 11/13/17 14:01:46    Pg. 2 of 12

Counseling, an agency approved pursuant to 11 U.S.C. §111 to provide credit counseling in the Western District of Washington, a briefing that complied with the provisions of 11 U.S.C. §109(h) and 111, which is in connection with the filing of bankruptcy.

10. On or about March 20, 2017, Defendant refinanced the Retail Installment Contract (the "Refinance"). A copy of the Refinance is incorporated herein and attached hereto as Exhibit 2.

11. Under the Refinance, Defendant promised to pay Plaintiff a sum of $26,777.29 in monthly installments of $318.72, with interest accruing on $23,188.88 at the rate of 4.25% per annum, with an increased interest rate from the Retail Installment Contract, and an extension in the term of the loan by nearly two years.

12. Defendant made no payments on the Refinance.

13. As part of the Refinance Amber Davis's personal liability was removed from the loan.

14. On March 23, 2017, only three days after the Refinance, Defendant paid NW Debt Relief $400.00 for additional attorneys' fees and $100.00 for a bankruptcy filing fee.

15. On April 21, 2017, Defendant surrendered the Collateral and subsequently filed for bankruptcy.

16. The Collateral was sold prior to the bankruptcy filing, leaving a deficiency balance.

17. By entering into the Refinance, Defendant represented that she would make the agreed-upon payment.

18. At the time Defendant entered into the Refinance, Defendant did not intend to

PAGE 3 OF 5 - COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(2)(A) (Oregon Community Credit Union)

MONSON LAW OFFICE P.C.
1865 NW 169th Place, Suite 208
Beaverton, OR 97006
Telephone: 503-828-1820
Facsimile: 503-828-1893

Case 17-04114-BDL    Doc 1    Filed 11/13/17    Ent. 11/13/17 14:01:46    Pg. 3 of 12

1  repay Plaintiff, or knew or should have known she would not repay Plaintiff. Plaintiff omitted to
2  state these material facts to Plaintiff known to the Defendant at the time of the Refinance, and
3  knew her representations to make payments to Plaintiff were false at the time of the Refinance.

    19. At the time Defendant entered into the Refinance, Defendant intended to file for bankruptcy, or knew or should have known she would be filing for bankruptcy. Plaintiff omitted to state these material facts to Plaintiff known to Defendant at the time of the Refinance.

    20. At the time Defendant entered into the Refinance, Defendant intended or knew that removing Amber Davis's personal liability from the loan would make Plaintiff unable to recover its loss when Defendant filed for bankruptcy.

    21. Plaintiff made representations and omitted to state material facts to Plaintiff, including the representations and omissions contained herein.

    22. At the time Defendant made these representations and omissions, she knew they were false.

    23. Had Plaintiff known of any of the misrepresentations and omissions stated herein, Plaintiff would not have authorized and entered into the Refinance.

    24. With the intention and purpose of deceiving Plaintiff to induce the granting of credit and the removal of Amber Davis's personal liability on the loan, Defendant made the representations and omissions contained herein, which constitute false pretenses, false representations, or actual fraud.

    25. Plaintiff justifiably relied on Defendant's false pretenses, false representation, or actual fraud.

    26. Plaintiff sustained damages as the proximate result of Defendant's false pretenses,

PAGE 4 OF 5 - COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(2)(A) (Oregon Community Credit Union)

MONSON LAW OFFICE P.C.
1865 NW 169th Place, Suite 208
Beaverton, OR 97006
Telephone: 503-828-1820
Facsimile: 503-828-1893

Case 17-04114-BDL    Doc 1    Filed 11/13/17    Ent. 11/13/17 14:01:46    Pg. 4 of 12

false representation, or actual fraud, including $6,633.35, plus interest on the sum of $6,633.35 at the rate of 3.5% per annum from June 5, 2017, until paid, plus attorneys' fees and costs.

27. The Refinance contains a provision that entitles Plaintiff to reasonable attorneys' fees and costs.

28. Plaintiff has incurred and will continue to incur reasonable attorneys' fees and costs.

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1. In the sum of $6,633.35, plus interest on the sum of $6,633.35 at the rate of 3.5% per annum from June 5, 2017, until paid, plus attorneys' fees and costs.; and

2. Declaring the above sums nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A); and

3. Awarding Plaintiff its attorney fees to the extent allowed by law; and

4. Awarding Plaintiff its costs and disbursements incurred herein; and

5. Awarding Plaintiff such other relief as may be just and equitable.

MONSON LAW OFFICE P.C.

/s/ Scott J. Mitchell
Scott J. Mitchell, WSB No. 48619
Attorneys for Plaintiff

PAGE 5 OF 5 - COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(2)(A) (Oregon Community Credit Union)

MONSON LAW OFFICE P.C.
1865 NW 169th Place, Suite 208
Beaverton, OR 97006
Telephone: 503-828-1820
Facsimile: 503-828-1893

Case 17-04114-BDL    Doc 1    Filed 11/13/17    Ent. 11/13/17 14:01:46    Pg. 5 of 12

# RETAIL INSTALLMENT SALE CONTRACT
## SIMPLE FINANCE CHARGE

DEAL 114298    Dealer Number **10171**    Contract Number _____

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Creditor-Seller (Name and Address) |
|---|---|---|
| SHEILA K HAVEN<br>9220 NE 91 ST<br>VANCOUVER WA 98662 CLARK | AMBER M DAVIS<br>9220 NE 91 ST<br>VANCOUVER WA 98662 CLARK | ALAN WEBB NISSAN<br>3608 NE AUTO MALL DR<br>VANCOUVER, WA 98662 |

I, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Creditor - Seller (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below, as explained in section 1 on the back. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used/Demo | Year | Make and Model | Odometer | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| USED | 2008 | CHEVROLET TAHOE | 86296 | 1GNFK13078R223351 | Personal, family, or household unless otherwise indicated below<br>☐ business<br>☐ agricultural |

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of $3000.00 |
|---|---|---|---|---|
| 3.99 % | $ 4976.83 | $ 32044.49 | $ 37021.32 | $ 40021.32 |

**Your Payment Schedule Will Be:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 84 | 440.73 | Monthly beginning 07/24/2015 |

Or As Follows: _____

**Late Charge.** If payment is not received in full within __10__ days after it is due, you will pay a late charge of $ __5__ or __5__ % of the part of the payment that is late, whichever is greater.
**Prepayment.** If you pay off all your debt early, you will not have to pay a penalty.
**Security Interest.** You are giving a security interest in the vehicle being purchased.
**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

**Insurance.** You may buy the physical damage insurance this contract requires (see back) from anyone you choose subject to our approval of your choice as the law allows. You are not required to buy any other insurance to obtain credit.

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

Check the insurance you want and sign below:
### Optional Credit Insurance
☐ Credit Life:    ☐ Buyer    ☐ Co-Buyer    ☐ Both
☐ Credit Disability:    ☐ Buyer    ☐ Co-Buyer    ☐ Both
Premium:
Credit Life $ _____ N/A
Credit Disability $ _____ N/A
Insurance Company Name _____ N/A
Home Office Address _____ N/A

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not to buy credit life insurance and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in Item 4A of the Itemization of Amount Financed. Credit life insurance is based on your original payment schedule. This insurance may not pay all you owe on this contract if you make late payments. Credit disability insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life insurance and credit disability insurance ends on the original due date for the last payment unless a different term for the insurance is shown below.

## ITEMIZATION OF AMOUNT FINANCED

1 Cash Sale Price
   Vehicle Cash Price ...................................................... $ 26157.00
   Other ___ N/A ___ ....................................................... $ N/A
   Other ___ N/A ___ ....................................................... $ N/A
   Other ___ N/A ___ ....................................................... $ N/A
   Other ___ N/A ___ ....................................................... $ N/A
   Sales Tax ................................................................. $ 2697.99
   Documentary Service Fee (THE DOCUMENTARY SERVICE FEE IS A NEGOTIABLE FEE. Documentary service fees are not required by the state of Washington.) ....... $ 150.00
   Total Cash Sale Price ................................................. $ 29004.99 (1)

2 Total Downpayment =
   Trade-In ___ N/A ___
          (Year)    (Make)    (Model)
   Gross Trade-In Allowance ............................................. $ N/A
   Less Payoff Made By Seller ........................................... $ N/A
   Equals Net Trade In .................................................. $ N/A
   + Cash ................................................................ $ 3000.00
   + Other ___ N/A ___ ................................................... $ N/A
   (If total downpayment is negative, enter "0" and see 4H below) ....... $ 3000.00 (2)

3 Unpaid Balance of Cash Price (1 minus 2) ............................ $ 26004.99
4 Other Charges Including Amounts Paid to Others on Your Behalf
   (Seller may keep part of these amounts):

### Other Optional Insurance
☐ ___ N/A ___    ___ N/A ___
   Type of Insurance    Term
Premium $ ___ N/A ___
Insurance Company Name ___ N/A ___
Home Office Address ___ N/A ___

☐ ___ N/A ___    ___ N/A ___
   Type of Insurance    Term
Premium $ ___ N/A ___
Insurance Company Name ___ N/A ___

Exhibit 1
Page 1 of 2

|   | Insurance Company or Companies. | | | |
|---|---|---|---|---|
|   | Life | $ N/A | | |
|   | Disability | $ N/A | $ | N/A |
| B | Other Optional Insurance Paid to Insurance Company or Companies | | $ | N/A |
|   | Total Insurance Paid to Insurance Companies | $ | | N/A |
| C | Optional Gap Contract | | $ | 895.00 |
| D | Official Fees Paid to Government Agencies | | | |
|   | to N/A for N/A | | $ | N/A |
|   | to N/A for N/A | | $ | N/A |
|   | to N/A for N/A | | $ | N/A |
| E | Government Taxes Not Included in Cash Price | | $ | N/A |
| F | Government License and/or Registration Fees | | | |
|   | LIC | | $ | 127.50 |
| G | Government Certificate of Title Fees | | $ | N/A |
|   | Total Official Fees Paid to Government Agencies | $ 127.50 | | |
| H | Other Charges (Seller must identify who is paid and describe purpose) | | | |
|   | to N/A for Prior Credit or Lease Balance | | $ | N/A |
|   | to NATIONAL WARRAN for SERVICE CONTRACT | | $ | 4249.00 |
|   | to N/A for N/A | | $ | N/A |
|   | to N/A for N/A | | $ | N/A |
|   | to ALAN WEBB NISSAN for LUBE FOR LIFE | | $ | 469.00 |
|   | to ALAN WEBB NISSAN for PULSE | | $ | 299.00 |
|   | to for N/A | | $ | N/A |
|   | to for | | $ | N/A |
|   | to for | | $ | N/A |
|   | Total Other Charges and Amounts Paid to Others on Your Behalf | | $ | 6039.50 |
| 5 | Amount Financed (3 plus 4) | | $ | 32044.48 (5) |

Other optional insurance is not required to obtain credit. Your decision to buy or not buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost.
I want the insurance checked above. We will apply for this insurance on your behalf.

X _____
Buyer Signature                        Date

X _____
Co-Buyer Signature                     Date

**THIS INSURANCE DOES NOT INCLUDE INSURANCE FOR BODILY INJURY LIABILITY, PUBLIC LIABILITY, OR PROPERTY DAMAGE LIABILITY.**

Returned Check Charge: If any check you give us is dishonored, you will pay a charge of the lesser of $40 or the face amount of the check if we make written demand that you do so.

OPTIONAL GAP CONTRACT. A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in item 4C of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.

Term 84 Mos.
Name of Gap Contract: GAP I
I want to buy a gap contract. [signature]

OPTION: ☐ You pay no finance charge if the Amount Financed, Item 5, is paid in full on or before ____N/A____ Year ____ SELLER'S INITIALS ____

☐ If checked, your last installment payment under this contract is a balloon payment ("Balloon Payment"). You have the option to do one or more of the following, as checked, at the time the Balloon Payment is due:
a) ☑ You may pay your Balloon Payment when due.
b) ☑ You may refinance the Balloon Payment. See paragraph 1.e. on the reverse side of this contract for details.
c) ☐ You may sell the vehicle back to us. See paragraph 1.e. on the reverse side of this contract for details. If you exercise this option, you must pay $ N/A per mile for each mile in excess of ____N/A____ miles shown on the odometer and you must pay for excess wear and use as provided in paragraph 1.e.

Assignee has assigned to its qualified intermediary, ____ALAN WEBB NISSAN____, its rights (but not its obligations) with respect to the purchase and sale of the vehicle.

**NO COOLING OFF PERIOD**
State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

HOW THIS CONTRACT CAN BE CHANGED. This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding. [signatures]
If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.
You authorize us to obtain information about you, or the vehicle you are buying, from the state motor vehicle department or other motor vehicle registration authorities.
See back for other important agreements.

NOTICE TO BUYER: (a) Do not sign this contract before you read it or if any spaces intended for the agreed terms, except as to unavailable information, are blank. (b) You are entitled to a copy of this contract at the time you sign it. (c) You may at any time pay off the full unpaid balance due under this contract, and in so doing you may receive a partial rebate of the finance charge. (d) The finance charge does not exceed ___3.990%___ (must be filled in) per annum computed monthly.

You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You acknowledge that you have read both sides of this contract, including the arbitration clause on the reverse side, before signing below. You confirm that you received a completely filled-in copy when you signed it.

Buyer Signs X [signature] Date 04/25/15   Co-Buyer Signs X [signature] Date 04/25/15

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other owner signs here X ____
Seller signs ALAN WEBB NISSAN   Date 04/25/15   Address X [signature]   Title FM

Seller assigns its interest in this contract to ____OREGON COMMUNITY CREDIT UNION____ (Assignee) under the terms of Seller's agreement(s) with Assignee.
☐ Assigned with recourse       ☑ Assigned without recourse       ☐ Assigned with limited recourse
Seller ALAN WEBB NISSAN         By [signature]       Title

FORM NO. 553-WA-B-A

ORIGINAL LIENHOLDER

Exhibit 1
Page 2 of 2

DocuSign Envelope ID: A580297D-DC46-4571-8B12-FD5D75344B37



**OREGON COMMUNITY CREDIT UNION**
P.O. Box 77002
Springfield, OR 97475
800.365.1111
OregonCommunityCU.org

# Loan Advance Disclosure (Fixed)

This Loan Advance Disclosure is issued as part of your Consumer Loan Agreement

| Borrower Name: | SHEILA K HAVEN | Account ID #: | |
|---|---|---|---|
| Co-Borrower Name: | | Date of Loan: | 3/20/2017 |
| Co-Borrower Name: | | Interest Rate: | 4.250 % |
| Co-Borrower Name: | | Principal Amount: | $ 23,188.88 |

## Truth-In-Lending Disclosure Statement

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 4.250 % | $ 3,583.41 | $ 23,188.88 | $ 26,772.29 |

Amount(s) paid to you and others on your behalf:

| Payable to | Amount | Payable to | Amount |
|---|---|---|---|
| DEPARTMENT OF LICENSING | $ 37.50 | | $ |
| INSTALLMENT-1202031451 | $ 23,151.38 | | $ |
| | $ | | $ |
| | $ | | $ |
| | $ | | $ |

**Payment Schedule:** Your loan payment schedule will be:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | WHEN PAYMENTS ARE DUE |
|---|---|---|
| 83 | $318.72 | Monthly beginning: 3/24/2017 |
| 1 | $318.53 | 2/24/2024 |

**Debt Protection Amounts.** If you have elected the optional Debt protection coverage, the cost is included in the *Total of Payments* and *Amount of Payments* above: $

**Late Fee:** If a payment is more than 10 days past due, you agree to pay a late fee of $25.
**Security:** To secure this loan you grant the Credit Union a security interest in the following described collateral:
Motor Vehicle(s):

| Year | Make | Model | VIN |
|---|---|---|---|
| 2008 | CHEVROLET | TAHOE | 1GNFK13078R223351 |
| | | | |
| Other: | | | |
| Other: | | | |

You grant the Credit Union a security interest in all your shares and deposits with the Credit Union. **Collateral securing this loan also secures all your obligations to us under the Consumer Loan Agreement or any other agreement (including credit cards),** except loans secured by real estate or a dwelling. Collateral securing other loans also secures this loan.
**Filing Fees:** $ 0.00
**Property Insurance:** You may obtain property insurance from anyone you want that is acceptable to the Credit Union.
**Prepayment:** If you pay off early, you will not have to pay a penalty. No portion of the prepaid finance charge (if applicable) will be refunded to you. See your contract documents for additional information about nonpayment, default, and any required repayment in full before the scheduled date.
**Loan Agreement Signatures:** You promise to pay this Consumer Loan and you grant the Credit Union a security interest in the collateral described above in accordance with your Consumer Loan Agreement. You agree this Loan Advance Disclosure is part of, and integrated with, your Consumer Loan Agreement. If you are signing as a Grantor, you agree only to grant a security interest, and you are not personally liable for this debt.

| Borrower: | *SHEILA K HAVEN* (DocuSigned) | Co-Borrower: | |
|---|---|---|---|
| Name: | SHEILA K HAVEN | Date: 3/20/2017 | Name: | Date: |
| Co-Borrower: | | Co-Borrower: | |
| Name: | | Date: | Name: | Date: |
| Grantor: | | Grantor: | Exibit 2 Page 1 of 5 |
| Name: | | Date: | Name: | Date: |

© 2015 Farleigh Wada Witt. All rights reserved. Rev. May, 2015 S. Scott

DocuSign Envelope ID: A580297D-DC46-4571-8B12-FD5D75344B37



P.O. Box 77002
Springfield, OR 97475
800.365.1111
MyOCCU.org

# Consumer Loan Agreement

This Consumer Loan Agreement ("Agreement") governs your Loan accounts with Oregon Community Credit Union. In this Agreement the terms "you" and "your" mean each person who signs the Consumer Loan Application, an Advance Disclosure or this Agreement as a borrower or owner of collateral, as applicable. The term "Credit Union" means Oregon Community Credit Union.

**1. Consumer Loan Documents.** Under this Agreement you are establishing an ongoing loan relationship with the Credit Union. You may request and receive Consumer Loans from time to time and you may establish a Line of Credit account.

   **a. Consumer Loans.** Each Consumer Loan that you request and we approve from time to time will be considered a separate Loan transaction that is consummated at the time a Loan Advance Disclosure for each Loan is accepted by you. The terms applicable to your Consumer Loans will be governed by: (i) the Consumer Loan Application (ii) this Agreement (iii) the Loan Advance Disclosures provided with each Loan; (iv) a Loan proceeds check endorsement; and (v) other Loan documents required under this Agreement. These Loan documents are incorporated in and integrated as part of this Agreement.

   **b. Line of Credit.** Upon your request and approval by the Credit Union, your Line of Credit will be established as an open-end, revolving Line of Credit. The terms applicable to your Line of Credit account will be governed by: (i) the Consumer Loan Application; (ii) this Agreement; (iii) the Line of Credit Account Disclosure provided at account opening; (iv) a Loan proceeds check endorsement; and (v) other Loan documents required under this Agreement. These Loan documents are incorporated in and integrated as part of this Agreement.

**2. Accessing Your Loans & Line of Credit.** If more than one person signs this Agreement or one of the loan documents, your obligations under this Agreement are joint and several. You and any co-borrower, jointly or alone, may request and receive loan advances under this Agreement, to suspend further advances, or terminate this Agreement. You may request loan advances in person, by mail, by telephone or electronic transfer service, or loan draft to the extent applicable. The Credit Union may disburse loan proceeds to you directly, to third parties, or to a deposit or share account of yours or any co-borrower in accordance with your instructions.

   **a. Consumer Loan Advances.** You may request and obtain one or more Consumer Loans from the Credit Union from time to time. You will receive a Loan Advance Disclosure at the time of each Loan which will contain specific disclosures regarding Loan amount, interest rate, fees, and security related to the particular advance. You may decline any Loan transaction after receiving the Advance Disclosure without obligation by notifying us within three days after receiving the Advance Disclosure and returning all Loan proceeds to us. However, once you have consummated the Loan transaction by retaining or using the Loan proceeds, you may no longer decline the Loan transaction.

   **b. Line of Credit Advances.** You may request and obtain a Line of Credit account from the Credit Union. You will receive Line of Credit Account Disclosures at the time your account is opened which will contain specific disclosures regarding interest charges, fees, and terms related to the account. At the time of your initial Line of Credit advance, you will receive Line of Credit Advance Disclosures which will contain specific disclosures regarding your approved credit limit, payment terms, and security related to the account. For a Line of Credit account, you may access credit on your account up to your approved credit limit, prepay any portion of the balance, and request subsequent advances from time to time without limitation, provided you are not in default. For a Quick Line of Credit Account, you may not access further credit if your balance exceeds $100.00. When the balance falls below 100.00 you may obtain further advances on your Quick Line of Credit Account up to the approved credit limit. The approved credit limit for a Line of Credit account is the maximum amount you may draw upon at any time under that account without getting specific approval for additional Line of Credit advances. If you overdraw a deposit account of yours, you agree we may treat that transaction as a request for an advance and your authorization to transfer funds to cover such overdraft. However, we will not transfer funds from a Quick Line of Credit account to cover overdrafts.

**3. Payment Terms.**

   **a. Promise to Pay.** You promise to pay the Credit Union all Loan or Line of Credit advances, interest, fees and charges and other amounts due in accordance with this Agreement.

   **b. Payment Methods.** You may make payments on your Consumer Loan or Line of Credit by automatic transfer from shares, payroll deduction, or by direct payment, as applicable. If you make automatic transfer payments, you are responsible for maintaining adequate funds in your account to satisfy your payments. If the Credit Union does not receive your payroll deduction, the Credit Union will not waive your payment requirement and you remain responsible for making timely payments. You may pay all or any portion of your account at any time without penalty, but any such prepayment will not relieve you of your obligation to make the required minimum payments. After your Loans are paid, the Credit Union may deposit payroll deduction amounts to your share account unless otherwise notified.

   **c. Periodic Payments.** For Consumer Loans, you agree to make the Periodic Payment as specified on the Loan Advance Disclosure by the due date specified by the Credit Union. In addition to the Periodic Payment, you agree to pay all amounts past due, including any late fees, immediately.

Exhibit 2
Page 2 of 5

    **i. Line of Credit Payments.** For Line of Credit accounts, your Periodic Payment will equal 3% of the outstanding balance, rounded up to the nearest $5, but will not be less than $10.

    **ii. Line of Credit Conversion Option Payments.** You may elect to convert all or any portion of the Line of Credit balance to a Fixed Rate Conversion Loan ("Conversion Option"). Your minimum payment for each Conversion Option will be an amount sufficient to amortize the Conversion Option balance over a period of up to 15 years. Your available line of credit is reduced by the outstanding balance of any Conversion Options. As you make payments reducing the principal balance of a Conversion Option, the available balance on your line of credit will automatically increase by the corresponding principal reduction amount. You may elect additional Fixed Rate Conversion Loans over the life of the Account up to the limit specified in the Loan Rate & Fee Schedule. Conversion Options may be subject to fees as specified below. You may have a maximum of 5 Conversion Options in place at one time.

    **iii. Quick Line of Credit Payments.** For Quick Line of Credit accounts, your Periodic Payment is $200, or the remaining balance in the account, whichever is less.

    **d. Crediting Payments.** Payments received at any office of the Credit Union prior to any posted transaction cutoff hours will be credited as of the day they are received and processed. Payments received after a transaction cutoff hour may not be credited until the next business day. All payments will be credited first to accrued interest, principal, and then to fees and outstanding charges on your Loan or Line of Credit.

**4. Interest Charges.**

    **a. When Interest Accrues.** Each Consumer Loan or Line of Credit advance will accrue interest beginning on the date the advance is posted to your account. Interest will continue to accrue on your account until the entire outstanding balance is paid in full. Loan advances deposited to a deposit account will be subject to interest from the date of deposit even if the funds are not withdrawn immediately.

    **b. How to Determine Interest.** You will pay interest based on the unpaid principal balance of your Loan or Line of Credit. The unpaid principal balance is the outstanding account balance which remains unpaid at the close of business each day after all transactions for the day have been posted. The interest based on your unpaid principal balance is computed by multiplying that balance by a Periodic Rate and multiplying by the number of days since the last payment or credit. To get the Periodic Rate, we divide the interest rate by 365.

    **c. Interest Rate.** The interest rate for each Loan will be set forth on the Loan Advance Disclosure. For Line of Credit accounts, the interest rate will be set forth on the Line of Credit Advance Disclosure. The Credit Union may change the rates it offers from time to time.

**5. Fees and Charges.** You agree to pay the fees and costs as set forth on the Loan Advance Disclosure provided with each Loan including any application fee. You agree to pay the fees and costs as set forth on the Line of Credit Account Disclosures.

    **a. Late Fee.** If any Loan payment is more than 10 days past due, you agree to pay a late charge of $25.

    **b. Over Limit Fee.** If you exceed your credit limit on your Line of Credit account, we may charge you $15 for each transaction that exceeds your credit limit, in addition to other rights we may have on default.

    **c. Fixed Rate Conversion Option Fee.** If you convert all or a portion of your balance to a Fixed Rate Conversion Loan, we may charge a fee of $25.

    **d. Collection Costs and Attorney Fees.** If you are in default under the terms of this Agreement, you agree to pay the Credit Union's costs in enforcing this Agreement and collecting any amounts you owe. The Credit Union's costs include, to the extent permitted by applicable law, reasonable attorney fees if the Credit Union hires an attorney, and legal expenses incurred whether or not a lawsuit is commenced, plus any court costs and all other reasonable sums allowed by law. Attorney fees and legal expenses include those related to bankruptcy proceedings (including efforts to modify or vacate any automatic stay), trials, appeals, and any anticipated post-judgment collection actions. You agree that all collection costs and attorney fees incurred by the Credit Union are secured in accordance with this Agreement.

    **e. Voluntary Payment Protection.** We may offer Voluntary Payment Protection to you. Voluntary Payment Protection is not necessary to obtain credit. If you purchase Voluntary Payment Protection from us, you authorize us to add the fees or payment protection charges monthly to your Loan balance and charge you interest on the entire balance. The rate used to determine the fees or payment protection charges may change in the future. If the rate changes, we will provide any notices required by applicable law.

**6. Events of Default.** You will be in default if any of the following happen:

    a. You fail to make any payment when due

    b. You break any promise you have made to the Credit Union in this or any agreement with the Credit Union;

    c. Any other creditor or governmental agency tries to take any of the collateral, including a garnishment of your Credit Union shares;

    d. The collateral is abandoned, lost, stolen, damaged, sold, borrowed against, levied upon, seized, or attached;

    e. There is any material adverse change in your financial condition;

    f. You or any guarantor die, become insolvent, make an assignment for the benefit of creditors, a receiver is

Exhibit 2

appointed, or a petition for bankruptcy is commenced by or against you;

g. Any information or representation you make on any application or agreement with the Credit Union is not true; or

h. The Credit Union in good faith deems itself insecure.

**7. Credit Union Actions.** You agree the Credit Union may accept late payments and partial payments and can delay enforcing any of its rights under this Agreement without losing them. The Credit Union's waiver of its rights in one instance does not constitute a waiver of its rights in other instances, or waiver of any other default. You agree the Credit Union may permit a modification, extension, or renewal of any term under this Agreement, or release or substitute collateral or any other person obligated for repayment of this Agreement or any guaranty, and you will remain liable for repayment of your Loan or Line of Credit. The Credit Union may exercise any of its rights under the security agreement and applicable law. In addition, the Credit Union may take other actions as follows:

**a. Suspension of Line of Credit Advances.** The Credit Union may suspend your ability to draw upon a Line of Credit or use any access device or advance checks, without prior notice to you, under the following conditions: (i) you are in default under this Agreement or any other agreement with the Credit Union; (ii) any credit verification indicates adverse information; (iii) any time the Credit Union reasonably determines the value of the collateral has declined; or (iv) you request a suspension of this account.

**b. Acceleration of Loan Balance.** Upon default, you waive demand and any notice, including notice of intent to accelerate and notice of acceleration. The Credit Union may declare the entire balance of your Loans immediately due, without prior notice.

**c. Credit Union Lien/Security Interest.** To the extent permitted by applicable law and to the extent of your indebtedness to the Credit Union, the Credit Union has a statutory lien on all your shares, deposits, and accumulated dividends or interest in all of your accounts at the Credit Union. In addition, you grant the Credit Union a security interest in all shares, deposits, and accumulated dividends or interest in all your accounts at the Credit Union, individual or joint, (except Individual Retirement Accounts). In the event that you fail to make any payments due to the Credit Union pursuant to the terms of this or any other agreement with the Credit Union, you authorize the Credit Union to immediately exercise its lien and apply the balance in these accounts to pay any indebtedness to the Credit Union, without further notice to you.

**d. Suspension of EFT Access or Service.** If you are in breach of this Agreement or any other loan, account, or service agreement with the Credit Union or we suspect fraudulent activity on your account, the Credit Union may without prior notice restrict access to your accounts or suspend your electronic services or access devices, including ATM or debit cards and online or mobile banking services. Such restrictions may continue until you cure any breach condition or any fraud condition is resolved.

**e. Credit Verification.** You agree to provide the Credit Union upon request at any time with current financial information, updated employment and credit information, or a new appraisal or valuation of collateral, as permitted by law. You understand that the Credit Union may record such information in its files and rely on it to make decisions about your account. You authorize the Credit Union at any time to release information to any credit bureau, merchant or other financial institution regarding the status and history of your account.

**8. Security Agreement.**

**a. Security Interest.** You grant the Credit Union a security interest, under the Uniform Commercial Code of the State in which the Credit Union is located, in all collateral described on any Loan Advance Disclosure or Line of Credit Account Disclosure received under this Agreement to secure your Loans and Line of Credit account under this Agreement and all your other obligations (except those secured by a dwelling or real property) to the Credit Union. Collateral granted under this Agreement covers your past liabilities to the Credit Union and any liabilities that may arise in the future, regardless of form. These include, but are not limited to, Loans for Consumer purposes, liability which is sole or joint, absolute or contingent, primary or secondary, purchase money or non-purchase money, and liability under promissory notes, credit cards, open accounts, or overdrafts (but not Loans secured by a dwelling or real property). The collateral includes accessions and additions installed in or affixed to the collateral and any proceeds of the collateral. All collateral securing this Loan will secure any extension, renewal, or modification of this Loan and all your other obligations.

**b. Maintenance.** You agree that collateral securing this Loan will be for personal use and will not be used as a dwelling. Except for our security interest, you own the collateral free and clear. You will not allow any other liens on the collateral, even if they are junior to ours. You agree to maintain the collateral in good working order and repair any damage that affects its value. Except for vehicles, you agree to keep the collateral at your address of record, unless we tell you that you can move it. If the collateral is a vehicle, you will keep it at your present address, except for routine use, and you will not do anything that requires registering the vehicle in another State. You may move the collateral to your new address only if you give the Credit Union the new address in advance. You agree the Credit Union may come upon your premises and inspect the collateral at any reasonable time without notice.

**c. Insurance.** You agree to keep the collateral insured with casualty and fire coverage satisfactory to the Credit Union, including an acceptable deductible. For vehicles, this means collision insurance and comprehensive insurance with a deductible amount acceptable to the

Exhibit 2

Credit Union. You may provide this insurance through an existing policy or a new policy obtained from anyone you want that is acceptable to the Credit Union, and you agree to provide the Credit Union with proof of that coverage. You agree to name the Credit Union as loss payee. If you fail to pay any liens, buy or maintain insurance, or make repairs to the collateral, we may do so. You agree we may add any insurance or maintenance costs to the amount you owe under this Agreement and may adjust your monthly payments to pay the Loan over its originally scheduled term. The added amounts will bear interest at the rate charged under this Agreement. Insurance we purchase will cover only the Credit Union's interest in the collateral and will not be liability insurance. This security provision also secures those amounts. You understand that all benefits paid by insurance that you or the Credit Union purchases and any insurance refunds or rebates will be applied first to pay the Loan balance.

WARNING - UNLESS YOU PROVIDE US WITH EVIDENCE OF THE INSURANCE COVERAGE AS REQUIRED BY OUR LOAN AGREEMENT, WE MAY PURCHASE INSURANCE AT YOUR EXPENSE TO PROTECT OUR INTEREST. THIS INSURANCE MAY, BUT NEED NOT, ALSO PROTECT YOUR INTEREST. IF THE COLLATERAL BECOMES DAMAGED, THE COVERAGE WE PURCHASE MAY NOT PAY ANY CLAIM YOU MAKE OR ANY CLAIM MADE AGAINST YOU. YOU MAY LATER CANCEL THIS COVERAGE BY PROVIDING EVIDENCE THAT YOU HAVE OBTAINED PROPER COVERAGE ELSEWHERE. YOU ARE RESPONSIBLE FOR THE COST OF ANY INSURANCE PURCHASED BY US. THE COST OF THIS INSURANCE MAY BE ADDED TO YOUR LOAN BALANCE. IF THE COST IS ADDED TO THE LOAN BALANCE, THE INTEREST RATE ON THE UNDERLYING LOAN WILL APPLY TO THIS ADDED AMOUNT. THE EFFECTIVE DATE OF COVERAGE MAY BE THE DATE YOUR PRIOR COVERAGE LAPSED OR THE DATE YOU FAILED TO PROVIDE PROOF OF COVERAGE. THE COVERAGE WE PURCHASE MAY BE CONSIDERABLY MORE EXPENSIVE THAN INSURANCE YOU CAN OBTAIN ON YOUR OWN AND MAY NOT SATISFY ANY NEED FOR PROPERTY DAMAGE COVERAGE OR ANY APPLICABLE MANDATORY LIABILITY INSURANCE REQUIREMENTS.

**d. Sale of Collateral Upon Default.** You may keep and use the collateral while this Agreement is not in default. If you are in default, we will have all of the rights of a secured party under the Uniform Commercial Code of the State in which the Credit Union is located, in addition to any other rights we may have. Upon request, you agree to make the collateral available to us at a place we designate. You authorize us to take possession of the collateral peaceably, with or without legal process, and sell it. If you are entitled to any notice required by applicable law, you agree that ten calendar days prior notice is enough. Unless you ask us in writing to give you notice at a different address, notice sent to you at your address of record will be sufficient.

**e. Additional Documents and Power of Attorney.** You agree to sign any other documents, such as financing statements, applications for certificates of title, and certificates of title, to perfect our security interest. You agree to give us an irrevocable power of attorney to sign your name to title certificate(s) and to apply in your name for the issuance of a certificate or title to any motor vehicle you have given as collateral. To the extent permitted by applicable law, you agree we may endorse any check payable to you, if you refuse, and you waive protest of such action.

**9. Amendments.** To the extent permitted by applicable law, you agree the Credit Union may amend the terms of this Agreement from time to time. The Credit Union will notify you of any changes as required by law. Any notice of change in terms required by law will be sent to your address of record. You agree to inform the Credit Union in writing of your current address at all times. The Credit Union will consider this address your address of record. Notices will be mailed to you at the most recent address you have provided the Credit Union in writing. To the extent permitted by law, you agree that notice to any one borrower will be considered as giving notice to all borrowers. No oral statement by any Credit Union officer or employee is included in this Agreement, which may be modified only in writing. For Line of Credit Accounts, changes will apply to existing accounts to the extent set forth in the change in terms notice. For Loans, changes will apply to new Loans taken after the change becomes effective.

**10. Applicable Law.** You agree this Agreement will be governed by and interpreted in accordance with the laws of the State of Oregon. If any provision of this Agreement is invalid, the rest of the provisions shall remain valid. If a lawsuit is commenced, you agree to submit to jurisdiction of the courts in the county where you reside.

| Borrower: | *SHEILA K HAVEN* (DocuSigned) | | Co-Borrower: | | |
|---|---|---|---|---|---|
| Name: | SHEILA K HAVEN | Date: 3/20/2017 | Name: | | Date: |
| Co-Borrower: | | | Co-Borrower: | | |
| Name: | | Date: | Name: | | Date: |
| Grantor: | | | Grantor: | | |
| Name: | | Date: | Name: | | Date: |

Exhibit 2
Page 5 of 5